**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BRUCE NARRAMORE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> HSBC BANK USA, N.A., AS ) <br> INDENTURED TRUSTEE FOR THE ) <br> REGISTERED NOTEHOLDERS OF ) <br> RENAISSANCE HOME EQUITY ) <br> LOAN TRUST 2006-2, its successors ) <br> and/or assigns; OCWEN LOAN ) <br> SERVICING LLC, a Florida ) <br> Corporation, ) <br> ) <br> Defendants. ) | No. 09-CV-635-TUC-CKJ <br><br> **ORDER** |

Pending before the Court is Defendants' OCWEN Loan Servicing, LLC and HSBC Bank as Trustee's Motion to Dismiss Plaintiff's First Amended Complaint; Memorandum of Points and Authorities [Doc. # 11]. On January 26, 2010, Plaintiff filed his Opposition to Motion to Dismiss First Amended Complaint [Doc. # 16]. Defendants filed their Reply [Doc. # 17] on February 4, 2010. Also pending before the Court is Defendants' Request for Judicial Notice [Doc. # 12]. The Court declines to take judicial notice of the documents submitted by Defendants. The fact of the documents existence is not disputed by either party, and the information contained within them is not essential to the issues addressed in this Order. Further, in its discretion, the Court finds this case suitable for decision without oral argument. *See* LRCiv. 7.2(f). The Parties have adequately presented the facts and legal arguments in their briefs and supporting documents, and the decisional process would not be significantly aided by oral argument.

## I. PROCEDURAL BACKGROUND

On October 22, 2009, Plaintiff Bruce Narramore filed an action in the Superior Court of Arizona, County of Pima, entitled *Bruce Narramore vs. HSBC Bank USA N.A. as Indentured Trustee, et. al.*, case number C20098191. Defendants then filed a Notice of Removal of Action Based Upon Diversity Jurisdiction on November 5, 2009. On November 13, 2009, after removal, Defendants filed a Motion to Dismiss [Doc. #6]. On November 23, 2009, Plaintiff filed his Response [Doc. #7] . On December 1, 2009, Defendants filed their Reply [Doc. #8]. Then, without seeking leave of this court to amend the original complaint, Plaintiff filed an Amended Complaint [Doc. #9] on December 6, 2009. Defendants then filed a Motion to Dismiss Plaintiff's First Amended Complaint [Doc. #11] on December 28, 2009. On January 26, 2010, Plaintiff filed his Opposition to Motion to Dismiss First Amended Complaint [Doc. #16]. Defendants filed their Reply [Doc. #17] on February 4, 2010.

## II. FACTS

A deed of trust was executed in April of 2006 from Plaintiff to Defendant, HSBC Bank USA ("HSBC"). OCWEN Loan Servicing, LLC ("OCWEN") was the servicing agent for the HSBC loan. According to Plaintiff, in 2007 a forbearance agreement was entered into with OCWEN to pay arrears. Defendants allege that the default in 2007 was due to loss of job and in no way related to any action by OCWEN. Plaintiff made payments, although late, on the forbearance agreement until he was approached by OCWEN in March, 2008, to consider a loan modification to reduce the interest rate. He claims he was told at that time that the modification would not be considered unless the loan was in default. In reliance, Plaintiff defaulted on the loan in an attempt to obtain the loan modification.

After defaulting on the loan, Plaintiff says a Trustee Sale was initiated but loan modification discussions were taking place. Plaintiff states that agents of OCWEN told him that if he made a good faith payment of $3,400, they would negotiate a loan modification and postpone the Trustee Sale as long as negotiations were continuing. In reliance, Plaintiff sent OCWEN the good faith

payment in February, 2009.[1] The Trustee Sale was then postponed from February to March and from March to April, and so forth until June, 2009. During those months, Plaintiff claims negotiations continued. No notice was given as to any of the continuances, and no notice was given when the Trustee Sale actually took place in June, 2009.

According to the Defendants, the negotiation for loan modification did take place. However, Defendants claim that Plaintiff was in default when they offered a modification that required a three month trial period. The trial period required him to make an initial payment of $2,749.41 on or before January 28, 2009, and two equal payments of $2,749.41 on or before March 1, 2009 and April 1, 2009. Plaintiff made the initial payment but failed to make any subsequent payment, therefore breaching his trial period for modification. Defendants then initiated a Trustee Sale and foreclosed on the property.

*Leave to Amend Complaint*

Where a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires." Rule 15(a), Fed. R. Civ. P. Leave to amend is not granted automatically, and may be denied if "permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Forman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962)). Prejudice to the opposing party is the most important factor. *Id.*

Plaintiff here failed to seek leave to amend the complaint or acquire written consent to do so from Defendants. Although Plaintiff did not adhere to Rule 15(a), Defendants responded by filing a Motion to Dismiss the First Amended Complaint. The risk of prejudice to Defendants at this early stage is limited, and had a motion to amend been filed, it likely would have been

---

[1]This is apparently what was intended in the Complaint although the Complaint jumps back and forth from 2008 to 2009.

granted.[2]  Considering the factors listed above, Plaintiff's Amended Complaint will be accepted.

### III. MOTION TO DISMISS

*Standard of Review*

A complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Rule 8(a), Fed. R. Civ. P.  Nonetheless, a complaint must set forth a set of facts that serves to put defendants on notice as to the nature and basis of the claim(s).  Dismissal is appropriate where a plaintiff has failed to "state a claim upon which relief can be granted."  Rule 12(b)(6), Fed. R. Civ. P.  However, a "court may not dismiss a complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.'"  *Mason v. Arizona*, 260 F. Supp. 2d 807, 812 (D. Ariz. 2003) (quoting *Barnett v. Centoni,* 31 F.3d 813, 813 (9th Cir. 1994)); *see also Coe v. County of Cook*, 162 F.3d 491, 496 (7th Cir. 1998) (state law claims that would clearly fail in state court may be dismissed on the merits).

To survive a Rule 12(b)(6) motion, a complaint must allege "more than labels and conclusions and a formulaic recitation of the elements of a cause of action[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  The complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Id.* Moreover, a district court "may not look beyond the complaint to plaintiff's moving papers, such as a memorandum in opposition to defendant's motion to dismiss" in considering how to rule on a Rule 12(b)(6) motion. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998).

To raise a right to relief beyond the speculative level, the complaint must do something more than make legal conclusions cast in the form of a factual allegation. *Moss v. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)).  A

---

[2]The Court recognizes that Plaintiff has unfairly taken an opportunity to attempt to correct his errors in light of Defendants' Motion to Dismiss; however, as discussed, infra, this has little prejudicial effect on Defendants.

- 4 -

1 claim must have facial plausibility which results when "the plaintiff pleads factual content that
2 allows the court to draw the reasonable inference that the defendant is liable for the misconduct
3 alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's
4 liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"
5 *Id.*

*Breach of Contract*

  A. Statute of Frauds

    Defendants claim the modification at issue concerned a loan agreement for the purchase of real property so the original transaction falls within the Arizona Statute of Frauds. Any original agreement that falls within the Statute of Frauds can only be modified in writing. Defendants therefore contend that Plaintiff has failed to state a claim upon which relief can be granted because no modification agreement was put in writing. Plaintiff argues the statute of frauds does not apply to this situation because he is not arguing that an actual modification agreement took place, merely that Defendants were obligated to negotiate a modification in good faith and that agreement need not be in writing.

    The Arizona Statute of Frauds is codified at A.R.S. § 44-101. Contracts for the conveyance of land fall under the definition of those that must be memorialized in writing to be valid and enforceable. *Owens v. M.E. Schepp Ltd. Partnership,* 218 Ariz. 222, 182 P.3d 664 (2008). An agreement to reduce to writing a contract within the statute of frauds must itself be in writing to be enforceable. *Trollope v. Koerner*, 106 Ariz. 10, 470 P.2d 91 (1970). Generally, Arizona case law does not recognize oral modifications of a contract that would originally fall under the statute of frauds, unless that oral modification is rescission of the contract as a whole. *Executive Towers v. Leonard*, 7 Ariz. App. 331, 439 P.2d 303 (Ct. App. 1968).

    Here, although the original contract for the conveyance of land through a loan agreement with Defendants would fall under the statute of frauds, Plaintiff has made it clear that his breach of contract claim is not for failure to modify the original loan agreement, but rather for failure to negotiate in good faith to modify the loan. *See Executive Towers*, 7 Ariz. App. at 333, 439 P.2d

- 5 -

at 305 ("an oral modification of a contract coming within the statue is ordinarily regarded as invalidated by the statute") (quoting 49 Am Jur. Statute of Frauds § 310 at 625). A contract to negotiate in good faith, however, does not fall under the statute of frauds. *See* A.R.S. § 44-101. Therefore, it does not need to be reduced to writing to be enforceable. As such, Defendants argument regarding the statute of frauds must fail.

### B. Failure to State a Claim for Breach of Contract

Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted. Defendants assert Plaintiff has not sufficiently alleged facts to establish the elements of a breach of contract. In Arizona, to state a claim for breach of contract, a plaintiff must allege an agreement, the right to seek relief, and breach by a defendant. *Commercial Cornice & Millwork, Inc. v. Camel Construction Services Corp.*, 154 Ariz. 34, 739 P.2d 1351 (Ct. App. 1987). The plaintiff must also show that damages resulted from the breach of contract. *Konrath v. Amphitheater Unified School Dist. No. 10*, 2007 WL 2809026, at *26 (D. Ariz. Sept. 26, 2007) (citing *Graham v. Asbury*, 112 Ariz. 184, 540 P.2d 656, 657 (1975)). For an enforceable contract, or agreement, to exist, there must have been an offer, an acceptance, consideration, and a mutuality of obligation. *Tabler v. Industrial Commission of Arizona*, 202 Ariz. 518, 47 P.3d 1156 (App. 2002); *Carroll v. Lee*, 148 Ariz. 10, 712 P.2d 923 (1986). "The party asserting the existence of the oral contract has the burden of proof." *Tabler*, 202 Ariz. at 521, 47 P.3d at 1160.

Defendants argue in the Motion to Dismiss Plaintiff's Amended Complaint that allegations of preliminary negotiations are not sufficient to state a claim for breach of contract as a matter of law. In *Johnson*, the court found that a Memorandum of Understanding containing the parties' understandings and intentions of a potential agreement and signed by the parties was not a binding agreement to negotiate in good faith. *Johnson Int'l, Inc. v. City of Phoenix*, 192 Ariz. 466, 967 P.2d 607 (1998).

Although plaintiff Johnson expended substantial sums of money to develop the design plans for the project at issue in the Memorandum, and the parties continued to negotiate for two

- 6 -

years, the Memorandum expressly provided that the agreement was not final until it was approved by the Board and a final agreement was signed. Johnson argued that the court should construe the Memorandum as a letter of intent that created a binding obligation to negotiate in good faith. In furtherance of this argument, Johnson cited authority from other jurisdictions that recognized an enforceable agreement to negotiate in good faith. The court did not agree with Johnson's characterization of the cases and said that "the policy of the law favors enforcement when it is clear that the parties intended themselves to be bound." *Id.* at 474, 967 P.2d at 614. The clause requiring approval by the Board and a final written agreement before any agreement was binding made clear that the parties did not intend to be bound to the Memorandum and were merely engaged in preliminary negotiations. *Id.*

In dicta, the *Johnson* court acknowledged that in certain circumstances an agreement to negotiate in good faith could be a valid contract where there is express language that conveys as much. The court looked to the reasoning of *Rennick v. O.P.T.I.O.N. Care Inc.*, 77 F. 3d 309 (9th Cir. 1996), where an agreement containing a non-binding clause was found to contain a contract to negotiate in good faith where the express language of the agreement obligated the parties. The agreement contained the language that the parties agreed to "continue good faith discussion directed toward the creation of formal written contract that, upon approval by the board of Director [sic] of each party, will be executed to establish the following arrangements." *Id.* at 314. Therefore, an otherwise non-binding agreement could create an obligation to negotiate in good faith where the parties included such language. *Id.* at 316.

In *Johnson*, the court also cited *Channel Home Centers v. Grossman,* 795 F.2d 291 (3rd Cir. 1986) for the proposition that evidence of preliminary negotiations alone do not constitute a contract. In *Channel*, the defendant prepared a detailed letter of intent providing lease terms to be agreed upon at a later date. The letter provided that the defendant would withdraw the lease property from the rental market and only negotiate with the plaintiff. Later, the defendant notified Channel that the negotiations were terminated and leased the property to another renter. Channel argued that the defendant entered into a contract to negotiate in good faith and then breached that contract. The defendant argued that the letter was merely evidence of preliminary

negotiations and could not be considered enforceable at law. *Id.* at 297-98.

The *Channel* court agreed that generally evidence of preliminary negotiations alone does not constitute a contract, but also recognized that where an agreement to negotiate in good faith meets the requisites of a contract, it could be held enforceable. Applying Pennsylvania law, the court held that the defendant's promise to withdraw the lease property from the market and negotiate the transaction to completion, along with a detailed letter of intent was sufficiently definite to be enforced as a valid contract. *Id.* at 300.

Similarly, other courts have enforced a sufficiently definite contract to negotiate in good faith as distinguishable from an unenforceable "agreement to agree." *See, e.g.*, *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251 (Ct. App. 2d Dist., Div. 7 2002). In *Copeland*, the California Court of Appeals reasoned that a contract to negotiate in good faith is not an agreement to agree because:

> If, despite their good faith efforts, the parties fail to reach ultimate agreement on the terms in issue the contract to negotiate is deemed performed and the parties are discharged from their obligations. Failure to agree is not, itself, a breach of the contract to negotiate. A party will be liable only if a failure to reach ultimate agreement resulted from a breach of that party's obligation to negotiate or to negotiate in good faith. *Id.* at 1257.

In that case, the *Copeland* court found that even where a contract to negotiate in good faith is proven, the only available measure of damages are those suffered in relying on the defendant to negotiate in good faith. *Id.* at 1263. The measure was said to include the "plaintiff's out-of-pocket costs in conducting the negotiations" but not lost expectations because there is no way of knowing what the ultimate terms of the agreement would have been if an agreement had resulted. *Id.*

Here, the Complaint does not allege that any written agreement to negotiate existed. There was no letter of intent that illustrated the terms of the agreement that were to be negotiated. There is also no allegation in the Complaint that any discussion with the OCWEN agent included a statement that the negotiations would take place in good faith. In *Johnson*, there were numerous written agreements, terms that would be negotiated, and many expenses spent in reliance of a contract that would result. 192 Ariz. 466, 967 P.2d 607. The *Johnson*

court still found no obligation to negotiate in good faith because there was a non-binding clause and an expression that board approval was required. That was enough for the court to find that the parties were merely engaged in preliminary negotiations and no obligation to negotiate in good faith was created. In this case there is even less definition as to negotiations. There was no written agreement as to modification, and admittedly, there was no agreement that a modification would be agreed to in the future.

There is no indication or allegation in the complaint that could be construed as Defendants entering into a contract to negotiate a loan modification in good faith. If no contract is sufficiently alleged, then there can be no breach of contract. Accordingly, Plaintiff has failed to state a claim regarding breach of contract upon which relief can be granted.

### C. Breach of Implied Warranty of Good Faith and Fair Dealing

As described above, Plaintiff has not sufficiently pled that a valid and enforceable contract to negotiate in good faith existed. Without alleging a contract, the implied warranty of good faith and fair dealing does not attach. Plaintiff's claim that Defendants breached an implied warranty of good faith and fair dealing is dismissed.

*Economic Loss Rule*

Defendants contend that any tort claim by Plaintiff is barred under the economic loss doctrine because Plaintiff does not allege any physical harm and all damages result from an alleged breach of contract. In Arizona, the economic loss rule "bars a party from recovering economic damages in tort unless accompanied by physical harm, either in the form of personal injury or secondary property damage. *Carstens v. City of Phoenix*, 206 Ariz. 123, 75 P.3d 1081, 1083 (App. 2003). The doctrine is not, however a blanket rule against tort recovery for economic losses. *Salt River Project v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 694 P.2d 198, 209 (1984). The economic loss doctrine, for instance, is not applicable to fraud in the inducement in Arizona. *KD & KD Enterprises, LLC v. Touch Automation, LLC*, 2006 WL 3808257 at *2-3 (D. Ariz. Dec. 27, 2006). Generally, where contract law has no mechanism to

- 9 -

protect the wronged party, the economic loss doctrine will not act to bar the claim. *Ares Funding, L.L.C. v. MA Maricopa, L.L.C.*, 602 F. Supp. 2d 1144, 1149 (D. Ariz. 2009).

Where a duty arises at law, not by contract, the economic loss rule should not act as a bar to recovery. *See Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 880 (9th Cir. 2007). Taking the facts alleged in the amended complaint as true, Plaintiff has sufficiently alleged that Defendants had a duty not to commit fraud or misrepresentation that arose out of law, not contract. Thus, the economic loss doctrine does not act as a bar to Plaintiff's claim for recovery.

*Intentional Infliction of Emotional Distress*

Plaintiff claims that Defendants are guilty of intentional infliction of emotional distress. To establish a claim for intentional infliction of emotional distress in Arizona, the conduct alleged "must be 'atrocious' and 'beyond all possible bounds of decency' so that an average member of the community would regard it as outrageous." *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 149 Ariz. 76, 78, 716 P.2d 1013, 1016 (1986) (citing Restatement (Second) of Torts § 46, cmt. d (1965)). Three elements are necessary: (1) the defendant's conduct must be capable of being characterized as "extreme and outrageous"; (2) the defendant must either intend to cause emotional distress or recklessly disregard near certainty that distress will result from his conduct; and (3) the defendant's conduct must have caused severe emotional distress. *Id.* at 78-79, 716 P.2d 1015-16.

A plaintiff may recover for intentional infliction of emotional distress only where the defendant's acts are "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Patton v. First Fed. Sav. and Loan Ass'n of Phoenix*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978) (quoting *Cluff v. Farmers Ins. Exchange*, 10 Ariz. App. 560, 562, 460 P.2d 666, 668 (1969)). Only when reasonable minds could differ as to whether the conduct described is sufficiently extreme or outrageous does the issue go to the jury. *Mintz v. Bell Atlantic Systems Leasing International, Inc.*, 183 Ariz. 550, 905 P.2d 559 (Ct. App. 1995).

In *Patton*, 118 Ariz. 473, 578 P.2d 152, the Arizona Court of Appeals held that the

- 10 -

granting of summary judgment against the plaintiff for a claim of intentional infliction of emotional distress was proper because the Trustee Sale at issue was not so outrageous that it would be considered atrocious or intolerable in the community. In that case, the plaintiff Mrs. Patton entered into a contract with First Federal Savings to pledge a $2,000 savings account for two years in order to get a loan to finance the purchase of a home. Some time later, Mrs. Patton entered into an agreement to sell the home, leaving First Federal as the first beneficiary and maintaining that Mrs. Patton would be responsible to the bank. First Federal then demanded that a transfer fee be paid along with a half percent raise in interest rate or the bank would require that the entire balance be paid under the "due on sale" provision of the Trust Deed. Mrs. Patton continued to make loan payments and had never been in default until First Federal refused to accept payments. However, the bank initiated a foreclosure sale and failed to give correct notice under A.R.S. § 33-801.

Mrs. Patton claimed the conduct by First Federal constituted intentional infliction of emotional distress. First Federal filed a Motion for Summary Judgment as to the claim and the trial court granted the motion. The Court of Appeals held that "while some of appellees' behavior may have been harsh and may have upset Mrs. Patton, it is still within the realm of acceptable business practice." *Id.*

In this case, Plaintiff alleges Defendant HSBC and its agents demanded a good faith payment to negotiate a modification to his loan only after inducing him to go into default. Amended Compl. [Doc. #9] at ¶54. This, along with Defendants' failure, refusal or inability to adequately staff the loan modification department to timely review financial information is claimed to be an intentional act that caused severe emotional distress when Plaintiff supposedly lost his home without any notice. Amended Compl. [Doc. #9] at ¶54-55. Even in the light most favorable to Plaintiff, such actions by Defendant HSBC do not rise to the level of "extreme or outrageous" such that they would be "intolerable to civilized society." *Patton*, 118 Ariz. 473, 578 P.2d 152. Therefore, as a matter of law, Plaintiff has failed to state a claim upon which relief can be granted for intentional infliction of emotional distress.

*Negligence*

Defendants argue that Plaintiff has failed to establish a claim for negligence. To establish a claim for negligence, a plaintiff must prove four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, 150 P.3d 228, 230 (2007) (citing *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983)). Generally, the element of duty is one for the court to decide, whereas the others are factual issues usually decided by the jury. *Id.*

In order to determine whether a duty of care existed, the court decides "whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985). No duty exists unless the relationship imposes a legal obligation for the benefit of one party on the other. *Ontiveros v. Borak*, 136 Ariz. 500, 508, 667 P.2d 200, 208 (1983).

Defendants contend that a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. Unless there is a special relationship created by excessive involvement in the lender's business, no duty of care is traditionally owed from a lender to a borrower. *See, e.g., Havasu Condo's Ltd. v. Security Pacific Corp.*, 5 F.3d 536, 1993 WL 311973 (9th Cir. 1993).

In *Wells Fargo Credit Corp. v. Smith*, 166 Ariz. 489, 803 P.2d 900 (Ct. App. Div. 1 1990), the court held that affidavits of borrowers raised a material question of fact regarding the duty of disclosure owed to them by lenders with respect to disclosing the amount of monthly payments due under the loan agreement. The court refused to grant summary judgment on the claim of negligence because there was a sufficient question as whether or not a duty existed between the lender and the borrower. *Id.* This demonstrates that at least in some traditional lender-borrower relationships, a duty to disclose exists which could create a material question of fact to survive pleadings. However, that duty is very narrow and limited only to the duty to

- 12 -

disclose. *Id.*

Plaintiff has alleged sufficient facts to survive a Rule 12(b)(6) Motion to Dismiss for the claim of negligence. Like the plaintiff in *Wells Fargo*, Plaintiff has asserted that Defendants had a duty to notify Plaintiff if a continuation of Trustee Sale was not going to take place. Plaintiff relied on this belief and statement by an OCWEN agent. Accordingly, Defendants' Motion to Dismiss the claim of negligence is denied as there are sufficient facts to establish a claim upon which relief may be granted.

*Fraudulent Inducement*

Plaintiff claims that Defendants are guilty of fraudulently inducing Plaintiff to make a good faith payment to continue the Trustee Sale while negotiation for a loan modification was ongoing. Defendants allege Plaintiff's claim must be dismissed because he has failed to plead with particularity. The Federal Rules of Civil Procedure, Rule 9(b), requires, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To make a claim for fraudulent inducement, the plaintiff must show:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) the speaker's intent that it be relied upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the listener's reliance on its truth; (8) the right to rely on it; and (9) his consequential or proximate injury. *Wells Fargo*, 166 Ariz. at 494, 803 P.2d at 905.

Rule 9(b) requires that a claim of fraud be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Castro v. Executive Trustee Serv.*, LLC., 2009 WL 438683 (D. Ariz. 2009). The plaintiff must allege the "who, what, when, where and how" to support a fraud claim. *Id.* Further, a plaintiff must set forth what is false or misleading about a statement and why it is false. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Plaintiff claims the actions of Defendants induced him to go into default on his loan and to make a good faith payment to continue negotiations. Amended Compl. [Doc. #9] at ¶ 54.

- 13 -

Neither allegation states a claim for fraudulent inducement. In the first instance, Plaintiff asserts he was fraudulently induced to default on his loan in order to negotiate a loan modification. One of the elements of fraudulent inducement is that the statement must be false. There is no showing that the statement by Defendants was false. Plaintiff's Amended Complaint acknowledges that after the conversation with Defendants in which he was allegedly told to default on the loan to enter into negotiations, Defendants began negotiation with the Plaintiff.

In addition, Plaintiff claims he was fraudulently induced to make a $3,400 payment to Defendants to continue loan modification negotiation. However, Plaintiff acknowledges that he was in default on the loan at that time. Regardless of Plaintiff's reason for making the payment, the money he paid was already owed to Defendants. The Plaintiff has alleged no injury for this payment. The only result was making a payment to Defendants that was already due to them. Plaintiff has failed to state a claim for fraudulent inducement upon which relief can be granted.

*Quiet Title*

Defendants move to dismiss Plaintiff's claim to quiet title, contending that merely alleging Defendants' claim is adverse to Plaintiff is insufficient under Rule 12(b)(6). To claim quiet title, A.R.S. § 12-1101 requires:

> An action to determine and quiet title to real property may be brought by any one having or claiming an interest therein, whether in or out of possession, against any person or the state when such person or the state claims an estate or interest in the real property which is adverse to the party bringing the action.

Defendant argues the complaint is insufficient because Plaintiff simply alleges the claim is adverse. The plaintiff is required to allege his ownership of the property and an adverse claim by the defendant and then the defendant must prove title. *Palmer v. Sunnyside*, 48 Ariz. 327 (1936). Plaintiff has pled that Defendants' claim is adverse, however, has failed to sufficiently allege that Plaintiff has an ownership of the property. A valid foreclosure eliminates the prior owner's interest in the property. There is no allegation from Plaintiff that the foreclosure was improperly performed according to statute. Any interest the Plaintiff has in title to the property would not be superior to the purchaser at the Trustee Sale. For these reasons, the Plaintiff's claim to Quiet

Title has not pled sufficient facts to establish a claim upon which relief can be granted.

*Fair Debt Collections Practices Act*

Plaintiff alleges that Defendants' actions constituted multiple violations of the Fair Debt Collections Practices Act (FDCPA) under 15 U.S.C. § 1692. The FDCPA applies only to debt collectors as described in the statute. A "debt collector" is defined as "any person who uses an instrumentality of interstate commerce . . . the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debt owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). This does not apply to creditors attempting or collecting their own debt. The term "debt collector" also does not include any person collecting or attempting to collect debt due another to the extent that such activity concerns a debt which was not in default at the time it was obtained by such person. *Id.*

The FDCPA was created to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." *Castro v. Executive Trustee Services, LLC*, 2009 WL 438683 at 6 (D. Ariz) (citing *Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1093 (C.D. Cal. 2006)). To be held liable for violation of the FDCPA, the defendant must be a "debt collector" under the Act's definition. *Id.* The District Court of Arizona has held that "foreclosing on a deed of trust is an entirely different path [than collecting funds from a debtor]. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property." *Id.* In *Castro*, 2009 WL 438683, the court found that where there was no allegation or suggestion in the complaint that Defendants were doing anything other than foreclosing on the plaintiff's property due to default, asserting a valid FDCPA claim was futile and the complaint was dismissed with prejudice. *Id.*

This reasoning is aligned with other courts that have held that mortgagors and mortgage service companies are not debt collectors and are exempt from liability under the FDCPA as a matter of law. *See, e.g., Scott v. Wells Fargo Home Mortg. Inc.*, 326 F. Supp. 2d 709 (E.D. Va.

2003); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (finding that neither mortgage servicing company nor pre-default assignee on promissory note were debt collectors). In *Perry*, the Fifth Circuit noted that the legislative history of the FDCPA indicates that mortgagees, assignees, service companies and trustee fiduciaries were not intended to be included in the definition of "debt collector." *See* S. Rep. No. 95-382, at 3-4 (1997); U.S. Code Cong. & Admin. News 1977, pp. 1695, 1698 ("[T]he committee does not intend the definition to cover the activities of trust departments, escrow companies, or other bona fide fiduciaries; the collection of debts, such as mortgages and student loans, by persons who originated such loans; [or] mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing[.]").

A recent case in the District Court of Arizona favorably cited *Perry* and came to the same conclusion about mortgagors and mortgage service companies. *Mansour v. Cal-Western*, 618 F.Supp.2d 1178 (D. Ariz. 2009). The plaintiff in *Mansour* purchased a property in October, 2006. The plaintiff obtained a loan to finance the purchase from SCME Mortgage, Inc. ("SCME"). SCME had a nominee beneficiary (MERS), a loan servicer (Aurora), and a foreclosure trustee (Cal-Western). The plaintiff defaulted on the loan and Cal-Western began a trustee sale. The plaintiff filed suit claiming, among other things, that the defendant violated the FDCPA. The complaint in *Mansour* alleged that defendants were "debt collectors" within the meaning of the FDCPA and that they violated the Act "by making false, deceptive, or misleading representations through unfair and unconscionable means regarding the alleged debt relating to the subject property." 618 F. Supp. 2d at 1183. Defendant filed a Rule 12(b)(6) Motion to Dismiss. The court granted the motion to dismiss as to the FDCPA claim because the defendant did not qualify as a "debt collector" under the FDCPA, foreclosing on a property is not a "debt," and there were not sufficient facts plead to create a plausible claim. *Id.* at 1182.

The *Mansour* court first held that the legislative history of the FDCPA lends support for the proposition that "mortgagees and their assignees, servicing companies, and trustee fiduciaries are not included in the definition of 'debt collector.'" *Id.* at 1182. Second, the court reasoned that non-judicial foreclosure proceedings are not collection of "debt" for FDCPA purposes. *Id.*

The court noted that the Ninth Circuit had not yet addressed the above issues, but also found that there was nothing to indicate the opposite. Finally, the court reasoned that even if the Defendants were "debt collectors" collecting "debt," they alleged no specific facts to put Defendants on fair notice of the conduct that violated the FDCPA. *Id.* at 1183.

In this case, Plaintiff alleged in the Amended Complaint that he obtained a loan and secured the Note by providing a deed of trust to HSBC [Doc. #9] at ¶ 9. OCWEN was an agent of HSBC with respect to the loan. Amended Compl. [Doc. #9] at ¶ 5. Plaintiff claims that OCWEN fits within the definition of debt collector defined in the FDCPA and that actions described in the Complaint "constituted multiple violations" of the FDCPA "that will be elaborated on more precisely with additional discovery."[3] Amended Compl. [Doc. #9] at ¶¶ 5 & 58. There are no facts provided by Plaintiff to indicate how Defendants qualify as "debt collectors" or how the foreclosure fits the definition of "debt" under the FDCPA. Following the reasoning of previous District of Arizona cases, "mortgagees and their assignees, servicing companies, and trustee fiduciaries are not included in the definition of 'debt collector.'" *Mansour*, 618 F. Supp. 2d at 1182. HSBC and OCWEN are a mortgagee and mortgage service company so they do not fit the definition of "debt collector" under the FDCPA. Further, non-judicial foreclosure proceedings are not collection of "debt." *Id.* There is no need to evaluate whether the facts otherwise alleged in the Complaint as to the practices of HSBC and OCWEN were a violation of the FDCPA because the FDCPA does not apply here. The Motion to Dismiss the FDCPA claim is granted.

*Credit Services Protections*

Plaintiff alleges that OCWEN fits the definition of a "credit services organization" and that their actions "violated multiple provisions of the Credit Services protections provided by

---

[3] Plaintiff appears to seek additional discovery to support his claims under the Fair Debt Collections Practices Act, Credit Services protections and Consumer Fraud protections. However, Rule 56(f) of the Federal Rules of Civil Procedure only applies at the Summary Judgment stage. In addressing the Motion to Dismiss the Amended Complaint, the Court need not evaluate the claim for additional discovery.

A.R.S. § 44-1701 that will be elaborated on more precisely with additional discovery" Amended Compl. [Doc. #9]. Defendants argue that they are exempt from the statute because they do not fit within the definition of "credit services organization."

A "credit services organization" is defined in A.R.S. § 44-1701 as:

> a person who, with respect to the extension of credit by others, sells provides, performs or represents that he can or will sell, provide or perform any of the following services in return for the payment of monies or other valuable consideration:
> (a) Improving a buyer's credit record, history or rating.
> (b) Obtaining an extension of credit for a buyer.
> (c) Providing advice or assistance to a buyer with regards to subdivision (a) or (b) of this paragraph.

The Complaint alleges that OCWEN fits the definition of a credit services organization, but recognizes that OCWEN was a servicing agent of HSBC. Plaintiff signed a forbearance agreement in 2008 with OCWEN as an agent for HSBC to pay back arrearages. There is no allegation or any reasonable inference to be made that OCWEN was offering or advising Plaintiff about improving his credit record or obtaining an extension of credit. The statement that OCWEN fits the definition is not sufficient to create a plausible claim of relief. As such, Plaintiff fails to state a claim upon which relief can be granted.

*Consumer Fraud Protections*

The Complaint claims that OCWEN fits the definition of Consumer Fraud protections provided in A.R.S. § 44-1521 and that Defendants committed multiple violations of those protections. A.R.S. § 44-1522 forbids:

> The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby . . .

Defendants argue that Plaintiff failed to allege sufficient facts to give rise to violation of the statute because there is no allegation of fraudulent behavior that Defendants knew was false at the time of the alleged behavior. To establish a violation of the Arizona Consumer Fraud Act, an injured consumer must show false promise or misrepresentation made in connection with the

- 18 -

sale or advertisement of merchandise and consequent and proximate injury. *Flagstaff Medical Center, Inc. v. Sullivan,* 773 F. Supp. 1325 (D. Ariz. 1991), affirmed in part, reversed in part, 962 F.2d 879 (9th Cir. 1992).

A consumer loan has been held to involve a "sale" within the meaning of the Consumer Fraud Act and was subject to its provisions. The loan was reasoned to be a sale of present use of money for promise to repay, and money was merchandise within the meaning of the Act. *Villegas v. Transamerica Financial Services, Inc.*, 147 Ariz. 100, 708 P.2d 781 (App. Div. 2 1985). Additionally, any oral negotiations to restructure a consumer loan have been considered an "advertisement" within the meaning of the Act. *Id.* Although intent is necessary to establish a violation of the Consumer Fraud Act, it is not necessary to show specific intent to mislead, intent to do the act is sufficient. *Flagstaff Medical*, 773 F. Supp. 1325.

The Complaint here alleges sufficient facts to establish a claim upon which relief can be granted according to Rule 12(b)(6). Plaintiff claims that in January, 2009, Plaintiff had discussions with agents of OCWEN that told him if he made a good faith payment, they would negotiate a loan modification with him and postpone the Trustee Sale while negotiations continued Amended Compl. [Doc. #9] at ¶ 20. In reliance of this payment, Plaintiff sent OCWEN a check. The Trustee Sale was then postponed but Plaintiff claims negotiations were still continuing when the Defendants failed to further postpone the sale. If taken in the light most favorable to the Plaintiff as required by Rule 12(b)(6), then the facts alleged amount to a plausible claim for relief under the Consumer Fraud Act.

*Conclusion*

The Court will dismiss the following counts for failure to state a claim upon which relief can be granted: (1) Breach of Contract; (2) Breach of Implied Warranty of Good Faith and Fair Dealing; (3) Intentional Infliction of Emotional Distress; (4) Fraudulent Inducement; (5) Quiet Title; (6) Fair Debt Practices Act; and (7) Credit Services protections. Fed. R. Civ. P. 12(b)(6). The Court further finds that Plaintiff sufficiently states claims for the following: (1) Negligence; and (2) Consumer Fraud.

Accordingly, IT IS ORDERED:

1. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [Doc. # 11] is GRANTED IN PART and DENIED IN PART.

2. Defendants shall file their Answer to Plaintiff's remaining claims within fourteen (14) days from the date of this Order.

3. Defendants' Motion to Dismiss [Doc. #6] is DENIED AS MOOT.

4. Defendants' Request for Judicial Notice [Doc. # 12] is DENIED.

DATED this 7th day of July, 2010.

Cindy K. Jorgenson
United States District Judge